UNITED STATES *v.* FRANKLIN SUGAR REFINING CO. (No. 528).[1]

1. WEIGHT OF IMPORTED SUGAR.
    A change in the weight of imported sugar resulting from natural evaporation only is not a change in its condition by "remanufacture or otherwise."
2. COUNTERVAILING DUTY ON SUGAR, TARIFF ACT OF 1897.
    The Secretary of the Treasury was empowered by law to make all needful regulations for the assessment and collection of a countervailing duty imposed by the tariff act of 1897 on sugar imported into this country from a country where a bounty had been paid and regardless of any possible change in the weight on a consignment of sugar from Germany after its importation, the established regulations of the Treasury Department then in force controlled the shipment, and the countervailing duty, accordingly, was properly assessed on the actual or landed weight.

United States Court of Customs Appeals, May 29, 1911.

TRANSFERRED from United States Circuit Court for Eastern District of Pennsylvania, Abstract 14351 (T. D. 27892).
[Affirmed.]
    *D. Frank Lloyd,* Assistant Attorney General (*Charles Duane Baker,* on the brief), for the United States.
    *James Wilson Bayard* and *John G. Johnson* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The appellee imported into this country at the port of Philadelphia numerous cargoes of raw sugar which had been produced in Germany. The shipments in question in this case commenced in the year 1898 and continued until 1904; the issues in the case are therefore controlled by the tariff act of 1897.

Paragraph 209 of that act imposed a certain duty upon such importations, and the duty provided by that paragraph was liquidated and paid without controversy.

In addition to the duty levied by the above paragraph, the importations became liable to a countervailing duty under the terms of section 5 of the same act. That section provided that whenever any country should pay a bounty upon the exportation of any merchandise from such country and such merchandise was dutiable under the provisions of the tariff act, there should be levied upon such merchandise upon its importation into this country an additional duty equal to the net amount of such bounty, and that the net amount of such export bounties should from time to time be ascertained, determined, and declared by the Secretary of the Treasury, who should make all needful regulations for the identification of such merchandise and for the assessment and collection of such additional duties.

During the time covered by the shipments in question the German Government paid a bounty upon the exportation of such sugar from that country, and the Secretary of the Treasury ascertained and declared the net amount of such bounty to be 2.50 marks per 100

---

[1] Reported in T. D. 31659 (20 Treas. Dec., 1170).

kilograms up to June 20, 1899, and 2.40 marks per 100 kilograms after that time. The importations in this case therefore became liable to additional duties at that rate.

The collector liquidated these duties by adopting the invoice or export weight of each cargo and computing the duty thereon at the rate of 2.50 or 2.40 marks per 100 kilograms. The importer protested and contended that the actual or landed weight of the sugar at importation should be taken as the basis of calculation and the duty ascertained by computing the proper rate upon each 100 kilograms thereof.

It is claimed by the Government that the actual or landed weight of a cargo of raw sugar when it reaches this country is about 1 per cent less on the average than the invoice weight, which is the weight at exportation. This is said to be the ordinary decrease in weight of a cargo from evaporation alone without considering any other kind of loss. It is obvious that such diminution would vary somewhat in different cargoes because of differing conditions. The importations at bar, however, seemed to follow the supposed rule.

The protest of the importer was heard, without the taking of evidence, by the Board of General Appraisers, and the collector was reversed. The Government appealed to the United States Circuit Court, Eastern District of Pennsylvania, where the testimony of witnesses was taken on the application of the Government over the objection and exception of the importer. Before judgment in that court the case was duly transferred to this court, and the appellant now prays for a reversal of the board's decision.

As appears from the foregoing statement, this case does not involve the duties imposed by paragraph 209, but only those provided by section 5; nevertheless both sections are here copied in full:

209. Sugars not above number sixteen Dutch standard in color, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above seventy-five degrees, ninety-five one-hundredths of one cent per pound, and for every additional degree shown by the polariscopic test, thirty-five one-thousandths of one cent per pound additional, and fractions of a degree in proportion; and on sugar above number sixteen Dutch standard in color; and on all sugar which has gone through a process of refining, one cent and ninety-five one-hundredths of one cent per pound; molasses testing above forty degrees and not above fifty-six degrees, three cents per gallon; testing fifty-six degrees and above, six cents per gallon; sugar drainings and sugar sweepings shall be subject to duty as molasses or sugar, as the case may be, according to polariscopic test: *Provided,* That nothing herein contained shall be so construed as to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the King of the Hawaiian Islands on the thirtieth day of January, eighteen hundred and seventy-five, or the provisions of any Act of Congress heretofore passed for the execution of the same.

5. That whenever any country, dependency, or colony shall pay or bestow, directly or indirectly, any bounty or grant upon the exportation of any article or merchandise from such country, dependency, or colony, and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise

is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The net amount of all such bounties or grants shall be from time to time ascertained, determined, and declared by the Secretary of the Treasury, who shall make all needful regulations for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

It will be noted that section 5 provided that whenever any country should pay a bounty upon the exportation of any merchandise from such country and such merchandise was dutiable under the act, then upon importation of such merchandise into this country it should be liable to an additional duty equal to the net amount of such bounty, and that the Secretary of the Treasury should from time to time ascertain, determine, and declare the net export bounties referred to in the section and should make all needful regulations for the identification of such merchandise and for the assessment and collection of such additional duties. In the performance of the duty thus imposed upon him that officer issued a number of declarations and departmental regulations in relation to such importations. These are given below:

(T. D. 18217.)

*Export bounties paid by foreign countries on exportation of sugar.*

TREASURY. DEPARTMENT, *July 31, 1897.*

GENTLEMEN: In reply to your letter of the 27th instant, I have to inform you that this department has not yet received the necessary data for the declaration contemplated by section 5 of the tariff act of July 24, 1897, in regard to export bounties paid by various foreign countries.

From information collected under the former tariffs, in regard to foreign bounties on the export of sugar, it appears that Germany, Austria, the Argentine Republic, and France pay the following bounties:

GERMANY.

1. On raw sugar at least 90 per cent polarization and on refined sugar under 98 per cent and at least 90 per cent, 2.50 marks per 100 kilos.

2. On candy and sugar in white, hard loaves, blocks, etc., at least 99½ per cent, 3.55 marks per 100 kilos.

3. On all other sugar at least 98 per cent, 3 marks per 100 kilos.

\*       \*       \*       \*       \*       \*       \*

Respectfully, yours, .

W. B. HOWELL, *Assistant Secretary.*

Messrs. ROGERS, HOLLOWAY & Co.,
    *Philadelphia, Pa.*

---

(T. D. 20407.)

*Additional duties on sugar imported from, or the product of, countries paying bounties on the export thereof.*

[Circular No. 199.]

TREASURY DEPARTMENT, *December 12, 1898.*

To *officers of the customs and others concerned:*

Section 5 of the act of July 24, 1897, provides as follows: [Here follows section 5.]

In pursuance of these provisions, the following amounts of bounties respectively paid or bestowed, directly or indirectly, on the export of sugars by the countries here

inafter named are hereby declared for the assessment of additional duties on sugars imported from, or the product of, such countries or their dependencies, viz:

\*          \*          \*          \*          \*          \*          \*

### GERMANY.

1. On raw sugar at least 90 per cent polarizarion and on refined sugar under 98 per cent and at least 90 per cent, 2.50 marks per 100 kilograms.

2. On candy and sugar in white, hard loaves, blocks, crystals, etc., at least 99½ per cent, 3.55 marks per 100 kilograms.

3. On all other sugar at least 98 per cent, 3 marks per 100 kilograms.

\*          \*          \*          \*          \*          \*          \*

Every invoice of sugar must be accompanied by a certificate of the United States consular officer at the port of shipment to the United States, naming place and country where the merchandise was produced, and, in the case of refined sugar, naming also the country of production of the raw sugar, molasses, or sirup used in the refining.

The liquidation of entries of sugar not accompanied by such certificates shall be suspended, and the estimated duties shall include an amount sufficient to cover the additional duty to which such sugar may be apparently liable.

The conversion of the several foreign currencies mentioned above into United States money will be governed by the provisions of section 25 of the act of August 28, 1894.

\*          \*          \*          \*          \*          \*          \*

L. J. GAGE, *Secretary.*

———

(T. D.,21274.)

*Export bounty on German raw sugar.*

[Circular No. 86.]

TREASURY DEPARTMENT, OFFICE OF THE SECRETARY,
*Washington, D. C., June 20, 1899.*

*To officers of the customs and others concerned:*

The net amount of the bounty paid by Germany on the export of raw sugar testing at least 90 per cent, as ascertained and determined under the provisions of section 5 of the act of July 24, 1897, is hereby declared as 2.40 marks per 100 kilograms for the assessment of additional duty under said law.

L. J. GAGE, *Secretary.*

———

(T. D. 21333.)

*Sugar bounty.*

Provisions of Circular No. 86 (S. 21274) regarding export bounty on German raw sugar applicable only to sugars shipped to United States on or after date of circular, June 20, 1899.

TREASURY DEPARTMENT, *June 30, 1899.*

SIR: In reply to the letter from your office, dated the 27th instant, I have to inform you that, in accordance with the established practice, the provisions of department's Circular No. 86 of June 20, 1899 (S. 21274), relative to export bounty on German raw sugar, are applicable only to sugars shipped to the United States on or after the date of the circular, previous shipments to remain subject to the provisions of similar circulars upon the subject in force at the time of each shipment.

Respectfully, yours,

O. L. SPAULDING, *Assistant Secretary.*

COLLECTOR OF CUSTOMS, *New York, N. Y.*

It appears, therefore, beyond controversy that the sugar in question, being exported from Germany and being of the requisite grade, had been paid an export bounty at the rate named in the declaration,

and was to be assessed at that rate for the countervailing duty provided by section 5. And the sole question upon the merits in this case is, whether from the law and the declarations and regulations made pursuant thereto, as above copied, the countervailing duty was to be determined by applying the conceded rates to the invoice or export weight of the cargoes on the one hand or to their actual or landed weight upon arrival on the other hand.

There was no testimony taken concerning the existence or amount of the German export bounty upon raw sugar during the time in question. All that appears in the record upon that subject is contained in the published declarations and regulations issued in 1898 and 1899 in conformity with the law. As appears above, these publications stated that the German Government paid an export bounty upon all raw sugar testing at least 90 per cent, and that the net amount of the bounty was 2.50 marks per 100 kilograms during part of the period in question, and 2.40 marks per 100 kilograms during the remainder thereof, and declared those rates "for the assessment of additional duties on sugars imported from or the product of" that country.

These regulations do not specifically state whether the assessment at the given rate should be computed upon the export or import weights of the cargoes, and this fact of itself seems to indicate that the import weight is the proper basis for such a computation. The rule is that all general provisions of the statute or general regulations of the department providing for the collection of duties at a certain rate to be computed upon the merchandise by number, volume or weight, refer to the importations as they arrive in this country. If a different meaning is intended in any case it should be stated with the distinctness proper for an exception to the rule.

The direct or primary duty prescribed by paragraph 209 above copied was concededly assessable upon the weight of the sugar at importation without regard to the weight at exportation. And section 5 also provided that in case of the payment of export bounties by a foreign Government upon any merchandise which was dutiable under our tariff law, *"then upon the importation of any such article or merchandise into the United States,"* the additional or countervailing duty should be imposed.

Whenever the actual weight of merchandise upon arrival is found to be greater than the invoice weight such actual weight should be and would be taken as the basis for the computation of duties assessable according to weight. And if the actual weight is the lesser one it should nevertheless be adopted. The same rule would also seem to be intended in the case of countervailing duties unless a contrary purpose is clearly made manifest in the law. If, for illustration, by some mischance a cargo of sugar absorbed moisture upon the voyage

and thus gained weight instead of losing it by evaporation, and nevertheless tested above the minimum degree, it should undoubtedly be assessed for the countervailing duty at such greater actual weight.

The Government contends that such an interpretation would not accomplish the object of the law. Congress obviously intended that the countervailing duty levied upon the importation should equal the net foreign bounty paid upon the exportation. It is contended that the export bounty must necessarily have been computed upon the export weight of the cargoes, and that if the countervailing duty should be assessed upon the import weight part of the bounty would be retained by the importer, because of the difference between the two. The Government does not contend that this complaint should apply to a case of actual loss of any part of the cargo from extraneous causes, but only to the ordinary shrinkage of weight from evaporation alone. It is argued that the evaporation simply reduced the moisture in the sugar, leaving the saccharine strength unimpaired, and that the actual value of the importation was not diminished by the loss of weight thus caused.

The testimony does not very clearly disclose how reliable these estimates may be. But all such facts and circumstances must have been considered by the Secretary in 1898 and 1899 when the regulations above copied were formulated. It was his function to ascertain from time to time the net amount of the export bounties paid upon such merchandise and to declare the same, and make all needful regulations for the identification of such merchandise and for the assessment and collection of such additional duties as would counterbalance the bounties. When he adopted a rate per 100 kilograms without specific provision that it should apply to any other than the import weight, he thereby practically held against the present claim of the Government and decided in effect that all things considered the duties and bounties would be most effectually equalized by computing the rate given by him upon the weight of the importations upon arrival.

It may be assumed that it was within his authority under the act to provide that the rate given by him should be computed upon the invoice weight, in case he found that method necessary to accomplish the purpose of the act.

We do not agree at all with the view that the duty could not have been assessed at the given rate upon the weight of the sugar at the time of exportation. That procedure would not have been taxing the property before its importation, but would have been taxing it at importation by a method of assessment in which its weight at exportation would simply have entered as a factor of computation. This would certainly have been within the authority conferred upon the Secretary in order to accomplish the purpose of the law. That

purpose undoubtedly was that the additional duty exacted here should equal the export bounty paid abroad. While the Secretary was given no power to alter or modify this purpose, he was given all power necessary to carry it into effect. However, he may have found upon investigation that the most practicable and effective method of accomplishing that purpose was by simply assessing upon the sugar upon arrival the same rate per 100 kilograms as was paid upon it at exportation, without attempting to differentiate because of the loss of weight by evaporation. There is nothing in the record which would show such a finding to be incorrect. The Government's claim that the total saccharine strength of the sugar was not at all impaired in this case by the loss of weight is not very reliably sustained by the record.

It will be observed also that the export bounty paid upon raw sugar by the German Government, according to the declaration of the Secretary, was a certain fixed rate upon each 100 kilograms testing at least 90°; there seems to have been no graduated scale of duty adjusted to different degrees of saccharine strength. So far as the declaration shows all raw sugar of that grade or more received the export bounty at the stated rate, and such raw sugar as fell below that degree did not receive that bounty. The regulation followed the declaration in terms and made no distinction between different degrees of strength above 90°, but simply provided that raw sugar testing at least 90° imported from Germany should pay additional duty at 2.50 marks or 2.40 marks per 100 kilograms. Apparently therefore the imported sugar as entered at port would have received no greater export bounty than the above-named rate computed upon its weight as it then was. It may be remarked again that the only statement made in the record concerning the German export bounty and its provisions is that made by the Secretary in the publication made pursuant to the section in the years 1898 and 1899. Nor does the court take judicial notice of the existence or amount of such foreign export bounties.

The view above indicated is strengthened by the history of the former litigation which occurred upon this same subject. In T. D. 23503, in a case arising upon precisely the same issue as this, the board held that the rate of 2.50 marks, or 2.40 marks, per 100 kilograms, should be computed upon the invoice weight of the cargoes, and not upon the landed weight. This decision was affirmed by the United States Circuit Court (137 Fed. Rep., 655), but both decisions were reversed by the United States Circuit Court of Appeals (142 Fed. Rep., 376). This latter decision, the opinion in which was written by Justice Gray, was announced on January 4, 1906. All the importations in the present case were made after that time and under the same act, and furthermore under the same declaration and regulations which existed at the time of the decided case. The fact

that no change was made in the regulations after the judgment in the above case implies an acquiescence in it.

It will be noted that section 5 provides that the bounty-paid merchandise should be subject to the countervailing duty whether such merchandise was imported in the same condition as when exported from the country of production or whether its condition had been changed by remanufacture or otherwise. This provision is commented upon in the briefs, but it does not seem to relate to the present issue. A change in the weight of the imported sugar, resulting from natural evaporation only, is not a change in its condition by "remanufacture or otherwise."

Upon the merits of the case the decision of the board should be affirmed, and therefore the several questions of procedure made in the case by appellee need not be considered.

The decision of the board is *affirmed*.